■ Robert J. Moser, Appellant, v Devine Real Estate, Inc. (Florida), et al., Respondents. [839 NYS2d 843]—

Spain, J. Appeal from those parts of an order of the Supreme Court (Aulisi, J.), entered March 1, 2007 in Warren County, which denied plaintiff's motion for partial summary judgment dismissing defendants' counterclaims and denied plaintiff's motion to strike defendants' jury trial demand.

The record evidence, when viewed in the light most favorable to defendants, reveals that, in 1998, plaintiff began working as an independent contractor brokering real estate

transactions for defendant Devine Real Estate, Inc. (Florida) (hereinafter defendant). Defendant is a real estate brokerage company specializing in the transfer of ownership of mobile home and recreational vehicle (hereinafter RV) parks. In 2001, defendant Devine Real Estate, Inc. (New York) (hereinafter Devine New York) was incorporated and plaintiff was named its vice-president, issued one share of its stock and put in charge of its corporate office in the City of Glens Falls, Warren County.

Between 1999 and 2003, plaintiff acted as a broker on many real estate transactions on behalf of defendants.[1] In several instances, nonparty Robert Morgan, who specialized in the ownership and operation of mobile home and RV parks, was the purchaser. In September 2002, at Morgan's invitation, plaintiff invested with Morgan in purchasing Hillcrest Mobile Home Park, a property which plaintiff was brokering on behalf of defendants. In December 2002, plaintiff brokered the sale of a park called Airline RV Resort for defendants to Morgan as purchaser. After the Airline closing, a dispute arose between plaintiff and defendants over plaintiff's commission, prompting plaintiff to consider an offer of employment by Morgan. At that point, plaintiff purchased an ownership share in Airline and, soon thereafter, an ownership interest in Pinehirst Tent & Trailer Resort, another property purchased by Morgan and brokered by plaintiff on behalf of defendants. The parties dispute whether plaintiff disclosed any of these purchases to defendants. In March 2003, plaintiff severed his business relationship with defendants and accepted full-time employment with Morgan.

Plaintiff commenced this action in May 2003, seeking a declaration that a noncompete clause in his 1998 independent contractor agreement with defendants was unenforceable as a matter of law and claiming breach of contract based on defendants' alleged failure to pay him certain commissions. Defendants counterclaimed, alleging breach of contract and fiduciary duties. In 2005, on plaintiff's motion for summary judg-

1. Although plaintiff urges us not to blur the distinction between defendant and Devine New York in the event that it is found that plaintiff owed a fiduciary duty to one and not the other, the evidence thus far precludes us from finding, as a matter of law, that plaintiff's relationship with the Devine entities can be so easily separated. Indeed, once Devine New York was incorporated, it appears that the Devine entities did business using letterhead which states "Devine Real Estate, Inc." and lists both Florida and New York addresses. In the complaint, plaintiff alleges that defendant and Devine New York "are affiliated companies, and have common ownership, and at all relevant times acted in concert to accomplish a common business purpose." Thus, plaintiff has failed to establish that he only brokered transactions on behalf of defendant and never on behalf of Devine New York (*see generally Confidence Transp. v Buck*, 218 AD2d 837 [1995]).

ment, Supreme Court declared the noncompete clause to be unenforceable, but determined that issues of fact precluded summary judgment on defendants' counterclaims. That decision was not appealed.

Following further discovery, in January 2007 plaintiff moved again for summary judgment, seeking to dismiss defendants' counterclaims of breach of fiduciary duty, usurpation of corporate opportunities and misappropriation of trade secrets, and to strike defendants' demand for a trial by jury. Defendants cross-moved, seeking to dismiss plaintiff's claims for certain commissions. Supreme Court denied plaintiff's motion, finding that issues of fact existed as to whether plaintiff breached a fiduciary duty by failing to disclose to defendants that he was acquiring an ownership in properties he was brokering, and whether he misappropriated corporate opportunities or trade secrets belonging to defendants. The court also denied plaintiff's motion to strike defendants' demand for a jury trial and defendants' cross motion for summary judgment on claims for alleged commissions owed. Plaintiff appeals.

We turn first to threshold issues raised by the parties' that certain issues are barred under the law of the case doctrine because they were previously determined by Supreme Court in its 2005 decision following the first round of summary judgment motions. Plaintiff argues that he is entitled to judgment, as a matter of law, that he did not owe defendants a fiduciary duty because Supreme Court's 2005 decision—which was never appealed—held that plaintiff, by signing the 1998 independent contractor agreement, did not become an employee of defendant and "did not enjoy a fiduciary relationship and was not promoted to a position of increased responsibility or trust." Although the parties are bound by this finding, we find that Supreme Court clearly left open the question of whether a fiduciary relationship nevertheless subsequently evolved between 1998 and 2003; indeed, the court pointed out that plaintiff became an officer and stockholder of various Devine enterprises during this period and that "separate and apart from any contractual requirements, questions of fact have also been raised as to whether plaintiff breached fiduciary obligations independently owed to the defendants." Likewise, we reject defendants' argument that Supreme Court's 2005 finding that issues of fact existed on the questions of breach of fiduciary duty, usurpation of corporate opportunity and misappropriation of trade secrets precludes us from now reaching a contrary determination. The denial of summary judgment establishes nothing more than that summary judgment is not warranted at the time; here, af-

ter further discovery and a second motion for summary judgment, the court may grant summary judgment if the facts warrant such a result (see Baker v Vanderbilt Co., 260 AD2d 750, 751-752 [1999]; see also Siegel, NY Practice § 287, at 470-471 [4th ed]).

Turning to the merits, plaintiff asserts that defendants' breach of fiduciary duty claims are duplicative of their breach of contract claims and should, therefore, be dismissed (see Brooks v Key Trust Co. N.A., 26 AD3d 628, 630 [2006]). We disagree. Here, it has been decided that the 1998 independent contractor agreement did not establish a fiduciary relationship between the parties, but issues of fact exist as to whether—apart from the terms of the contract—sufficient allegations have been set forth which "created a relationship of higher trust than would arise from [the contract] alone" (EBC I, Inc. v Goldman, Sachs & Co., 5 NY3d 11, 20 [2005]). Specifically, after plaintiff signed the independent contractor agreement in 1998, he became an officer and shareholder of Devine New York and was named president of RJM Real Estate, Inc., another Devine family-owned business incorporated in Massachusetts. Although plaintiff asserts that he was, at best, a nominal officer and shareholder of Devine New York and, thus, owed no fiduciary obligation to defendants, defendants dispute this assertion, contending that plaintiff held a position of authority and trust within their corporations and had exclusive authority over the day-to-day operations of Devine New York. Accordingly, we find that issues of fact exist as to the extent of plaintiff's role in the Devine-family businesses, whether such a relationship gave rise to a fiduciary duty and whether plaintiff may have breached such a duty by failing to disclose to defendants that he was also a purchaser in certain transactions which he brokered (see id. at 22-23). Accordingly, we agree with Supreme Court that summary judgment is not warranted on defendants' breach of fiduciary duty counterclaims.

We agree with plaintiff, however, that he is entitled to summary judgment dismissing defendants' counterclaims premised on the allegation that, in buying into the Hillcrest, Airline and Pinehirst transactions,[2] plaintiff misappropriated corporate opportunities belonging to defendants (see Alexander & Alexander of N.Y. v Fritzen, 147 AD2d 241, 246 [1989]). "A corporate opportunity is defined as any property, information, or prospective business dealing in which the corporation has an interest or

---

**2.** At oral argument before Supreme Court, defendants narrowed the scope of their misappropriation of corporate opportunity counterclaims to these three transactions.

tangible expectancy or which is essential to its existence or logically and naturally adaptable to its business" (*Matter of Greenberg* [*Madison Cabinet & Interiors*], 206 AD2d 963, 964 [1994] [citations omitted]; *see Alexander & Alexander of N.Y. v Fritzen, supra; Design Strategies, Inc. v Davis*, 384 F Supp 2d 649, 671-675 [2005]). The "tangible expectancy" test and the "essential element" test have been independently defined and applied (*see e.g. Alexander & Alexander of N.Y. v Fritzen, supra* at 247-248; *Design Strategies, Inc. v Davis, supra*), but we have yet to determine whether both tests must be met, or whether they are independent, alternate avenues which can be used to identify a corporate opportunity. We need not resolve that question here, as we agree with plaintiff that, under either test, defendants have failed to allege facts demonstrating that plaintiff usurped a corporate opportunity belonging to defendants.

We turn first to the essential element test, as we perceive it to be the easier inquiry on this record. Indeed, defendants have failed to allege that the opportunity to procure an ownership interest in any of the properties they were brokering was "necessary" for or "essential" to its business such that "the consequences of deprivation are so severe as to threaten the viability of the enterprise" (*Alexander & Alexander of N.Y. v Fritzen, supra* at 248). Defendants' principals admitted in their deposition testimony that defendants were exclusively in the brokering business and had never invested in mobile home and RV parks. Further, with respect to the transactions at issue, defendants participated as brokers and received their commissions. Accordingly, we find no basis upon which to premise a claim that acquiring an ownership interest in these properties was within the scope of—much less necessary and essential to—defendants' business.

A tangible expectancy is "something much less tenable than ownership, but . . . more certain than a desire or hope" (*id.* at 247-248 [internal quotation marks and citation omitted]; *see Blaustein v Pan Am. Petroleum & Transp. Co.*, 293 NY 281, 300 [1944] [defining tangible expectancy as "a right which in its nature was inchoate"]). As discussed, defendants admit that they were not in the business of owning interests in mobile home and RV parks and Morgan unequivocally testified that he would not have offered defendants the ownership opportunity that he extended to plaintiff. Typically, such evidence that the third party would not have done business with the corporation, but only the employee or officer individually would have, is sufficient to preclude the finding that a corporate opportunity

existed (*see DiPace v Figueroa*, 223 AD2d 949, 952 [1996]). Indeed, defendants have not offered evidence to rebut Morgan's unqualified statement that he would not have offered defendants the opportunities that he offered to plaintiff—opportunities which were linked to plaintiff joining Morgan's investment company. Instead, defendants alleged that they met with Morgan and plaintiff prior to the Airline and Pinehirst closings to discuss a proposal whereby Morgan would purchase the properties, improve them and then, with defendants' help, would convert them to a cooperative or not-for-profit corporation and resell them at a profit, in which defendants would share. No written agreement was ever reached on the proposal. More significantly, the proposal did not involve any capital investment by defendants but was apparently proffered as a means of making a profit from defendants' expertise in the marketing of mobile home and RV parks. Thus, we find the proposal sufficiently different from plaintiff's purchase of an ownership interest in these properties such that the foregoing evidence is inadequate to raise a question of fact as to whether defendants had a tangible expectation in acquiring an ownership interest in the subject properties.

We also find that plaintiff is entitled to summary judgment dismissing defendants' trade secrets counterclaims. A trade secret has been defined as " 'any formula, pattern, device or compilation of information which is used in one's business, and which gives him [or her] an opportunity to obtain an advantage over competitors who do not know or use it' " (*Ashland Mgt. v Janien*, 82 NY2d 395, 407 [1993], quoting Restatement of Torts § 757, Comment *b*; *accord Marietta Corp. v Fairhurst*, 301 AD2d 734, 738 [2003]). Plaintiff met his prima facie burden as the movant for summary judgment by alleging that none of the information identified by defendants—not customer information nor the terms of the proposal proffered by defendants to Morgan—qualifies as trade secrets. Inasmuch as defendants' only opposition to these assertions consists of nonspecific conclusory statements, summary judgment dismissing counterclaims based on misappropriation of trade secrets is warranted.

Finally, we find that Supreme Court did not err in denying plaintiff's motion to strike defendants' demand for a jury trial. Although defendants seek equitable relief in their counterclaims, and equitable counterclaims ordinarily should be tried by the court (*see* CPLR 4101), the relevant inquiry "is not whether an equitable counterclaim exists but whether, when viewed in its entirety, the primary character of the case is legal or equitable" (*Cadwalader Wickersham & Taft v Spinale*, 177 AD2d 315, 316

[1991]; *see Chauvin v Keniry,* 216 AD2d 753, 753 [1995], *appeal dismissed* 87 NY2d 896 [1995]). Our review of the record persuades us that the crux of defendants' remaining viable counterclaims sound in breach of contract and breach of fiduciary duty, and the request for an accounting to ascertain any monetary damages suffered is incidental to those legal claims.

Mercure, J.P., Mugglin, Rose and Kane, JJ., concur. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as denied plaintiff's motion dismissing defendants' counterclaims alleging misappropriation of corporate opportunities and misappropriation of trade secrets; motion granted to that extent and summary judgment awarded to plaintiff dismissing said counterclaims; and, as so modified, affirmed.