■ INTERNATIONAL SHOPPES, INC., et al., Respondents-Appellants, v AT THE AIRPORT, LLC, et al., Defendants, and CONCETTA PETRUCCI, Appellant-Respondent. [16 NYS3d 72]—

In an action, inter alia, to recover damages for breach of a

settlement agreement, the defendant Concetta Petrucci appeals, as limited by her brief, (1) from so much of an order of the Supreme Court, Nassau County (Brandveen, J.), entered August 8, 2012, as directed a hearing on her motion for summary judgment, in effect, determining that this action is one involving public petition and participation within the meaning of Civil Rights Law § 76-a, dismissing the complaint insofar as asserted against her, and on her counterclaim pursuant to Civil Rights Law § 70-a, and (2) from so much of an order of the same court entered March 11, 2013, as, upon reargument, vacated so much of the order entered August 8, 2012, as directed a hearing on her motion for summary judgment, and thereupon, in effect, denied her motion, and the plaintiffs cross-appeal, as limited by their brief, (1) from so much of the order entered August 8, 2012, as directed a hearing on the defendant Concetta Petrucci's motion for summary judgment, and (2) from so much of the order entered March 11, 2013, as, in effect, denied that branch of their motion which was, in effect, for summary judgment determining that this action is not one involving public petition and participation within the meaning of Civil Rights Law § 76-a.

Ordered that the appeal and cross appeal from the order entered August 8, 2012, are dismissed as academic, without costs or disbursements, in light of the subsequent vacatur of the portions of that order appealed and cross-appealed from in the order entered March 11, 2013, and our determination of the appeal and cross appeal therefrom; and it is further,

Ordered that the order entered March 11, 2013, is modified, on the law, by deleting the provision thereof, upon reargument, in effect, denying that branch of the defendant Concetta Petrucci's motion which was for summary judgment, in effect, determining that this action is one involving public petition and participation within the meaning of Civil Rights Law § 76-a, and substituting therefor a provision, upon reargument, granting that branch of the motion; as so modified, the order entered March 11, 2013, is affirmed insofar as appealed and cross-appealed from, without costs or disbursements.

Contrary to the plaintiffs' contention, upon reargument, the Supreme Court should have granted that branch of the motion of the defendant Concetta Petrucci (hereinafter Petrucci) which was for summary judgment, in effect, determining that this action is one involving public petition and participation within the meaning of Civil Rights Law § 76-a, commonly known as a strategic lawsuit against public participation, or SLAPP suit.

Civil Rights Law § 76-a (1) provides, in relevant part:

"(a) An 'action involving public petition and participation' is an action, claim, cross claim or counterclaim for damages that is brought by a public applicant or permittee, and is materially related to any efforts of the defendant to report on, comment on, rule on, challenge or oppose such application or permission.

"(b) 'Public applicant or permittee' shall mean any person who has applied for or obtained a permit, zoning change, lease, license, certificate or other entitlement for use or permission to act from any government body, or any person with an interest, connection or affiliation with such person that is materially related to such application or permission."

Here, the plaintiffs are "public permittees" within the meaning of the statute, since that term encompasses those who have obtained a lease from a government body, and the plaintiffs have obtained concessionary leases from the Port Authority of New York and New Jersey (hereinafter the Port Authority). Moreover, those causes of action specifically asserted against Petrucci in the complaint are "materially related" to her efforts to report on those leases, since they are premised upon her statements to the Port Authority's Office of the Inspector General (hereinafter the OIG) regarding whether the plaintiffs, inter alia, intentionally underreported their revenues and thus paid less rent than was owed under the leases. Inasmuch as the complaint alleges that Petrucci affirmatively instigated the subject investigations by the OIG in a calculated attempt to undermine the plaintiffs' leases with the Port Authority, and that she made her statements directly to the governing body responsible for the leases (*cf. Silvercorp Metals Inc. v Anthion Mgt. LLC*, 36 Misc 3d 660 [Sup Ct, NY County 2012]), Petrucci demonstrated her prima facie entitlement to judgment as a matter of law determining that this action is a SLAPP suit, and the plaintiffs failed to raise a triable issue of fact in opposition. Accordingly, this action is properly characterized as a SLAPP suit (*see generally National Fuel Gas Distrib. Corp. v Push Buffalo [People United for Sustainable Hous.]*, 104 AD3d 1307 [2013]; *Goldstein v Held*, 93 AD3d 689 [2012]; *Novosiadlyi v James*, 70 AD3d 793 [2010]; *Singh v Sukhram*, 56 AD3d 187 [2008]; *Matter of Related Props., Inc. v Town Bd. of Town / Vil. of Harrison*, 22 AD3d 587 [2005]).

However, Petrucci was not entitled to summary judgment dismissing those causes of action specifically asserted against her in the complaint, or on her counterclaim pursuant to Civil Rights Law § 70-a: While we share the dissent's concern for safeguarding the rights of citizens to comment on matters of public concern, and we acknowledge that "Civil Rights Law

§ 76-a was enacted to provide special protection for defendants in actions arising from the exercise of their rights of public petition and participation by deterring SLAPP actions" (*Novosiadlyi v James*, 70 AD3d at 794; *see Allan & Allan Arts v Rosenblum*, 201 AD2d 136, 143-144 [1994]), we conclude that the plaintiffs sustained their statutory burdens in opposition to the motion by demonstrating that the action "has a substantial basis in fact and law" (CPLR 3212 [h]; *see Giorgio v Pilla*, 100 AD3d 826 [2012]; *Matter of Related Props., Inc. v Town Bd. of Town/Vil. of Harrison*, 22 AD3d 587 [2005]). Indeed, the plaintiffs came forward with allegations and supporting evidence indicating that Petrucci, despite knowing or having reason to know that revenues were not intentionally underreported and that rent was properly paid, falsely and maliciously advised Port Authority investigators that the plaintiffs were intentionally underreporting revenues from the leasehold premises and underpaying rent, and that she did so out of personal enmity and to disrupt the existing and prospective contractual and business relations between the plaintiffs and the Port Authority as well as to undermine the terms of a settlement agreement entered into between the plaintiffs and Petrucci's father in 2007 (*see generally Guard-Life Corp. v Parker Hardware Mfg. Corp.*, 50 NY2d 183, 194 [1980]; *Kevin Spence & Sons v Boar's Head Provisions Co.*, 5 AD3d 352, 354 [2004]). Additionally, the plaintiffs submitted evidence demonstrating that the ensuing investigation resulted in a finding that they committed no wrongdoing. Moreover, while the truth or falsity of Petrucci's statements was material to the causes of action asserted against her, the plaintiffs made an adequate showing that Petrucci's statements to investigators were false and were known by her to be false or were made with reckless disregard of whether they were false (*see* Civil Rights Law § 76-a [2]; *Singh v Sukhram*, 56 AD3d 187 [2008]; *cf. Goldstein v Held*, 93 AD3d 689 [2012]; *Novosiadlyi v James*, 70 AD3d 793 [2010]). Accordingly, at this pre-discovery phase of the litigation, the plaintiffs' submissions were sufficient to withstand Petrucci's motion for summary judgment, and further proceedings are necessary to resolve the issues raised by the parties.

Petrucci's contention regarding the holding of an immediate hearing to determine factual issues is unpersuasive (*see* CPLR 3212 [h]), and her contention regarding the statute of limitations, raised for the first time on appeal, is not properly before this Court (*see Whitehead v City of New York*, 79 AD3d 858 [2010]). The plaintiffs' remaining contentions are without merit. Mastro, J.P., Sgroi and Cohen, JJ., concur.

Miller, J., concurs in part and dissents in part, and votes to

reverse the order entered March 11, 2013, insofar as appealed from, and, upon reargument, grant that branch of the defendant Concetta Petrucci's motion which was for summary judgment dismissing the complaint insofar as asserted against her, and remit the matter to the Supreme Court, Nassau County, for a determination of the merits of that branch of her motion which was for summary judgment on her counterclaim pursuant to Civil Rights Law § 70-a, with the following memorandum: While I agree that the defendant Concetta Petrucci (hereinafter Petrucci) demonstrated, prima facie, that this is an action involving public petition and participation as defined by Civil Rights Law § 76-a (1) (a), I am unable to conclude that the plaintiffs discharged their burden of demonstrating, in opposition to Petrucci's motion, that the causes of action asserted against her have a substantial basis in fact and law. In my view, the proof offered by the plaintiffs was inadequate to set forth, prima facie, any of the various causes of action asserted against Petrucci. Accordingly, I must respectfully dissent, in part, and vote to grant that branch of Petrucci's motion which was for summary judgment dismissing the complaint insofar as asserted against her.

In 1992, the New York State Legislature recognized that "the threat of personal damages and litigation costs . . . [had] been used as a means of harassing, intimidating or punishing individuals, unincorporated associations, not-for-profit corporations and others who [had] involved themselves in public affairs" (L 1992, ch 767, § 1). The Legislature declared that "the rights of citizens to participate freely in the public process must be safeguarded with great diligence" (id.).

In order to achieve this policy, the Legislature enacted legislation to provide heightened protections for defendants in actions which involve public petition or participation, often referred to as strategic lawsuits against public participation, or SLAPP suits (see L 1992, ch 767, §§ 1-6; see also 600 W. 115th St. Corp. v Von Gutfeld, 80 NY2d 130, 137 n 1 [1992]; Hariri v Amper, 51 AD3d 146, 148-149 [2008]).

Under this legislation, an "action involving public petition and participation" is defined as "an action, claim, cross claim or counterclaim for damages that is brought by a public applicant or permittee, and is materially related to any efforts of the defendant to report on, comment on, rule on, challenge or oppose such application or permission" (Civil Rights Law § 76-a [1] [a]). If an action is determined to be an action involving public petition and participation, "damages may only be recovered if the plaintiff, in addition to all other necessary elements, shall

have established by clear and convincing evidence that any communication which gives rise to the action was made with knowledge of its falsity or with reckless disregard of whether it was false, where the truth or falsity of such communication is material to the cause of action at issue" (Civil Rights Law § 76-a [2]).

"[T]he Legislature, at the same time that the amendments to the Civil Rights Law were passed, also amended New York's Civil Practice Law and Rules in order to impose upon plaintiffs, in actions involving public petition and participation, a heightened standard of proof to avoid dismissal of the action" (*Hariri v Amper*, 51 AD3d 146, 150 [2008]; *see* CPLR 3211 [g]; 3212 [h]). Under these new procedural provisions, if a defendant moving for summary judgment demonstrates that the action is one "involving public petition and participation" as defined by Civil Rights Law § 76-a (1) (a), the motion "shall be granted" unless the plaintiff demonstrates that the cause of action has a "substantial basis in fact and law" (CPLR 3212 [h]; *see Hariri v Amper*, 51 AD3d at 150-151).

Accordingly, where the truth or falsity of a communication is material to the cause of action at issue, the plaintiff has the burden of demonstrating, not only that each element of the cause of action has a substantial basis in fact and law, but that there is also a substantial basis in fact and law supporting the allegation that the communication was made with actual malice (*see* Civil Rights Law § 76-a [2]; CPLR 3212 [h]). If a plaintiff fails to sustain any component of the burden imposed under CPLR 3212 (h), a court must grant the motion for summary judgment dismissing the complaint or the relevant causes of action (*see Novosiadlyi v James*, 70 AD3d 793, 794 [2010]).

In this case, Petrucci demonstrated, prima facie, that this is an "action involving public petition and participation" as defined by Civil Rights Law § 76-a (1) (a). I agree with my colleagues in the majority that Petrucci established that this action was "brought by a public applicant or permittee" and that it "is materially related to any efforts of [Petrucci] to report on, comment on, rule on, challenge or oppose such application or permission" (Civil Rights Law § 76-a [1] [a], [b]). Accordingly, since Petrucci sustained her burden in support of her motion for summary judgment, the burden shifted to the plaintiffs (*see* CPLR 3212 [h]).

In order to avoid dismissal of the causes of action asserted against Petrucci, the plaintiffs were required to establish that each of the causes of action asserted in the complaint against Petrucci has a "substantial basis in fact and law" (CPLR 3212

[h]), and, to the extent applicable to each cause of action, that communication by Petrucci regarding the plaintiffs' concessionary leases was made with knowledge of its falsity or with reckless disregard of whether it was false (*see* Civil Rights Law § 76-a [2]; *Novosiadlyi v James*, 70 AD3d at 794). Since the plaintiffs did not meet this burden, that branch of Petrucci's motion which was for summary judgment dismissing the complaint insofar as asserted against her should have been granted.

The complaint generally alleges that in 2005 and 2006, Petrucci's father, Anthony Petrucci (hereinafter Anthony), commenced four lawsuits against the plaintiffs on behalf of himself and the corporate defendants At the Airport, LLC, and DAJA, LLC (hereinafter together the corporate defendants). The complaint alleges that in 2007, Anthony and the corporate defendants entered into a settlement agreement (hereinafter the 2007 settlement agreement) with the plaintiffs (excluding Diplomatic Duty Free Shoppes of New York, Inc. [hereinafter DDFS]), in order to resolve the various lawsuits commenced by Anthony. The complaint does not allege that Petrucci was a party to the 2007 settlement agreement in any capacity.

The complaint asserts nine causes of action. However, it sets forth no specific allegation against Petrucci, nor is she mentioned by name, in the first, fourth, fifth, sixth, and seventh causes of action.

The first cause of action seeks to recover damages for breach of the 2007 settlement agreement. It alleges that the 2007 settlement agreement contained a "non-disparagement provision" which prohibited the defendants from engaging in communication with "any person or entity which disparages or casts a negative light on [the] plaintiffs." The complaint also alleges that the 2007 settlement agreement required Anthony and the corporate defendants to return certain confidential information to the plaintiffs. The first cause of action alleges that Anthony and the corporate defendants violated the non-disparagement provision and improperly withheld confidential information in violation of the 2007 settlement agreement. Accordingly, the first cause of action is not asserted against Petrucci. In any event, the plaintiffs failed to demonstrate that there is a substantial basis in law and fact for a cause of action against Petrucci for breach of the 2007 settlement agreement since there is no allegation or evidence demonstrating that she was a party to that agreement or was otherwise bound by it (*see* CPLR 3212 [h]; *see generally Moulton Paving, LLC v Town of Poughkeepsie*, 98 AD3d 1009, 1010-1011 [2012]).

The fourth cause of action seeks to recover damages for breach of fiduciary duty. The complaint alleges that Anthony owed a duty of loyalty to the plaintiffs (excluding DDFS) and that he breached that duty by "disparaging [the] [p]laintiffs." Accordingly, the fourth cause of action is not asserted against Petrucci. In any event, the plaintiffs failed to demonstrate that there is a substantial basis in law and fact for a cause of action against Petrucci alleging breach of fiduciary duty since there is no allegation or evidence demonstrating that she owed the plaintiffs a fiduciary duty or that she otherwise breached any such duty (see CPLR 3212 [h]; see generally AG Capital Funding Partners, L.P. v State St. Bank & Trust Co., 11 NY3d 146, 158 [2008]).

The fifth cause of action alleges interference with the plaintiffs' good will. This cause of action alleges that Anthony and one of the corporate defendants communicated "negative and disparaging information" about the plaintiffs in "breach of their common law duties . . . not to interfere with, denigrate or devalue the goodwill of [the plaintiffs]." Accordingly, the fifth cause of action is not asserted against Petrucci. In any event, the plaintiffs failed to demonstrate that there is a substantial basis in law and fact for a cause of action against Petrucci alleging interference with the plaintiffs' good will (see CPLR 3212 [h]; see generally Mohawk Maintenance Co. v Kessler, 52 NY2d 276, 284 [1981]; Borne Chem. Co. v Dictrow, 85 AD2d 646, 650 [1981]).

The sixth cause of action alleges fraudulent concealment. This cause of action alleges that Anthony and the corporate defendants had a duty to disclose certain information to the plaintiffs while the parties were negotiating the 2007 settlement agreement. The complaint further alleges that Anthony and the corporate defendants fraudulently concealed certain information that they had a duty to disclose in order to induce the plaintiffs to enter into the 2007 settlement agreement. Accordingly, the sixth cause of action is not asserted against Petrucci. In any event, the plaintiffs failed to demonstrate that there is a substantial basis in law and fact for a cause of action against Petrucci alleging fraudulent concealment inasmuch as there is no allegation or evidence demonstrating that she owed any duty to disclose any information to the plaintiffs, or that any such concealment induced the plaintiffs into entering into the 2007 settlement agreement (see CPLR 3212 [h]; see generally E.B. v Liberation Publs., 7 AD3d 566, 567 [2004]; Dash v Jennings, 272 App Div 1073, 1074 [1947]).

The seventh cause of action alleges unjust enrichment. This

cause of action merely alleges that in view of the fraudulent and wrongful conduct of Anthony and the corporate defendants described elsewhere in the complaint, those defendants had been unjustly enriched. Accordingly, the seventh cause of action is not asserted against Petrucci. In any event, the plaintiffs failed to demonstrate that there is a substantial basis in law and fact for a cause of action against Petrucci alleging unjust enrichment (*see* CPLR 3212 [h]; *see generally Lebovits v Bassman*, 120 AD3d 1198, 1199 [2014]).

The second, third, eighth, and ninth causes of action are asserted against the "[d]efendants" generally. The second cause of action seeks to recover damages for tortious interference with prospective business advantage. The third cause of action seeks to recover damages for tortious interference with contractual rights. These causes of action allege that "[i]n violating the . . . 2007 Settlement Agreement and/or in taking actions in denigration of the interests of [the] Plaintiffs . . . either directly . . . or through the use of agents and emissaries who acted on their behalf, [the] Defendants knew or should have known" that they were interfering with the plaintiffs' economic relations with certain entities and with the plaintiffs' contracts with certain third parties.

The Court of Appeals has recognized that "inducing breach of a binding agreement and interfering with a nonbinding 'economic relation' can both be torts, but that the elements of the two torts are not the same" (*Carvel Corp. v Noonan*, 3 NY3d 182, 189 [2004]). "[T]he degree of protection available to a plaintiff for . . . tortious interference with contract is defined by the nature of the plaintiff's enforceable legal rights" (*NBT Bancorp v Fleet/Norstar Fin. Group*, 87 NY2d 614, 621 [1996]; *see Carvel Corp. v Noonan*, 3 NY3d at 189-190; *Guard-Life Corp. v Parker Hardware Mfg. Corp.*, 50 NY2d 183, 191 [1980]). "Thus, where there is an existing, enforceable contract and a defendant's deliberate interference results in a breach of that contract, a plaintiff may recover damages for tortious interference with contractual relations even if the defendant was engaged in lawful behavior" (*NBT Bancorp v Fleet/Norstar Fin. Group*, 87 NY2d at 621; *see Carvel Corp. v Noonan*, 3 NY3d at 189-190). "Where there has been no breach of an existing contract, but only interference with prospective contract rights, however, plaintiff must show more culpable conduct on the part of the defendant" (*NBT Bancorp v Fleet/Norstar Fin. Group*, 87 NY2d at 621; *see Carvel Corp. v Noonan*, 3 NY3d at 189-190).

Accordingly, in order to recover on a cause of action alleging

tortious interference with prospective business advantage, a plaintiff must demonstrate that: "(a) the plaintiff had business relations with a third party; (b) the defendant interfered with those business relations; (c) the defendant acted with the sole purpose of harming the plaintiff or by using unlawful means; and (d) there was resulting injury to the business relationship" (*Thome v Alexander & Louisa Calder Found.*, 70 AD3d 88, 108 [2009]; *see Carvel Corp. v Noonan*, 3 NY3d at 189-190; *North State Autobahn, Inc. v Progressive Ins. Group Co.*, 102 AD3d 5, 21 [2012]; *see also* Restatement [Second] of Torts § 768). In order to show that a defendant interfered by "unlawful means," a plaintiff must generally demonstrate that "the defendant's conduct . . . amount[ed] to a crime or an independent tort" (*Carvel Corp. v Noonan*, 3 NY3d at 190).

Here, in opposition to Petrucci's prima facie showing, the plaintiffs failed to demonstrate that there is a substantial basis in law and fact for a cause of action against Petrucci alleging tortious interference with prospective business advantage. The complaint does not allege, and the plaintiffs have tendered no evidence to demonstrate, that Petrucci engaged in criminal behavior, or that she breached any fiduciary duty owed to the plaintiffs or otherwise committed an independent tort (*cf. Carvel Corp. v Noonan*, 3 NY3d at 190). Nor have the plaintiffs alleged or demonstrated that Petrucci acted with the sole purpose of harming the plaintiffs. Indeed, the plaintiffs' theory of the case is that Petrucci acted to help her father Anthony's position in his dealings with the plaintiffs and for her own personal gain (*see Carvel Corp. v Noonan*, 3 NY3d at 190 [theory that the defendant acted with the sole purpose of inflicting intentional harm was not applicable where "(i)t is undisputed that (the defendant's) motive in interfering with the (plaintiffs') relationships with their customers was normal economic self-interest"]).

The only allegations that could support a theory that Petrucci acted tortiously in interfering with the plaintiffs' prospective business advantage are the plaintiffs' contentions that Petrucci made false and misleading accusations to governmental agencies. However, a cause of action premised on such theories would render the truth or falsity of Petrucci's communication material to the cause of action and, accordingly, the plaintiffs must demonstrate that such communication "was made with knowledge of its falsity or with reckless disregard of whether it was false" (Civil Rights Law § 76-a [2]).

In opposition to Petrucci's motion, the plaintiffs failed to demonstrate that Petrucci provided false information or that

any such communication was made with actual malice. The fact that the plaintiffs may have settled with various entities without a finding or admission of any wrongdoing does not establish, prima facie, that Petrucci's communication was false or misleading. Moreover, even if the plaintiffs had demonstrated that her communication was inaccurate in some respect, that fact alone would not be sufficient to demonstrate, prima facie, that Petrucci knew or should have known of the inaccuracy at the time she made the communication (*see Kipper v NYP Holdings Co., Inc.* 12 NY3d 348, 358 n 7 [2009] ["there is not even circumstantial, let alone 'direct,' evidence which could clearly and convincingly establish that defendant's inaccurate rewrite was published with actual malice"]; *Prozeralik v Capital Cities Communications*, 82 NY2d 466, 476 [1993] ["falsity alone . . . would not be sufficient to sustain plaintiff's burden"]).

In light of the plaintiffs' failure to tender proof to establish actual malice, they may not rely upon any allegedly false or misleading communications made by Petrucci to support their cause of action against her alleging tortious interference with prospective business advantage (*see* Civil Rights Law § 76-a [2]). Since the plaintiffs have otherwise failed to establish, prima facie, the third essential element of that cause of action, to wit, that Petrucci "acted with the sole purpose of harming the plaintiff or by using unlawful means" (*Thome v Alexander & Louisa Calder Found.*, 70 AD3d at 108), it is unnecessary to consider whether they sustained their burden with respect to the remaining elements of that cause of action. In any event, the plaintiffs failed to set forth evidence demonstrating, prima facie, that their business relationship with any third party was injured due to Petrucci's action (*see American Preferred Prescription v Health Mgt.*, 252 AD2d 414, 419 [1998]). Inasmuch as the plaintiffs failed to demonstrate that there is a substantial basis in law and fact for the cause of action alleging tortious interference with prospective business advantage insofar as asserted against Petrucci, the Supreme Court should have granted that branch of Petrucci's motion which was for summary judgment dismissing the second cause of action insofar as asserted against her (*see* CPLR 3212 [h]).

As previously indicated, the third cause of action seeks to recover against the defendants for tortious interference with contractual rights. To state a cause of action alleging tortious interference with contract, the plaintiff must allege: (a) the existence of a valid contract between it and a third party; (b) the defendant's knowledge of that contract; (c) the defendant's

intentional procurement of the third party's breach of that contract without justification; and (d) damages (*see Lama Holding Co. v Smith Barney*, 88 NY2d 413, 424 [1996]; *Ferrandino & Son, Inc. v Wheaton Bldrs., Inc., LLC*, 82 AD3d 1035, 1036 [2011]).

Here, the complaint does not allege, and the plaintiffs have tendered no evidence to demonstrate, that Petrucci procured a breach of any contract between the plaintiffs and a third party. Although the complaint alleged that Anthony and the corporate defendants breached the 2007 settlement agreement, the plaintiffs have failed to allege or make a prima facie showing that, but for Petrucci's actions, Anthony and the other defendants would not have breached that agreement (*see Lama Holding Co. v Smith Barney*, 88 NY2d at 424; *Ferrandino & Son, Inc. v Wheaton Bldrs., Inc., LLC*, 82 AD3d at 1036). Furthermore, although the complaint alleges the existence of certain lease agreements between the plaintiff International Shoppes, Inc., and the nonparty Port Authority of New York and New Jersey, the plaintiffs have failed to allege or make a prima facie showing that there was a breach of those agreements (*see Lama Holding Co. v Smith Barney*, 88 NY2d at 424; *Ferrandino & Son, Inc. v Wheaton Bldrs., Inc., LLC*, 82 AD3d at 1036). Inasmuch as the plaintiffs failed to demonstrate that there is a substantial basis in law and fact for the cause of action alleging tortious interference with contractual rights insofar as asserted against Petrucci, the Supreme Court should have granted that branch of Petrucci's motion which was for summary judgment dismissing the third cause of action insofar as asserted against her (*see* CPLR 3212 [h]).

The eighth cause of action seeks to recover damages for "negligence and negligent misrepresentation." " '[A] claim for negligent misrepresentation requires the plaintiff to demonstrate (1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information' " (*Mandarin Trading Ltd. v Wildenstein*, 16 NY3d 173, 180 [2011], quoting *J.A.O. Acquisition Corp. v Stavitsky*, 8 NY3d 144, 148 [2007]). A special relationship may be established by "persons who possess unique or specialized expertise, or who are in a special position of confidence and trust with the injured party such that reliance on the negligent misrepresentation is justified" (*Kimmell v Schaefer*, 89 NY2d 257, 263 [1996]; *see Mandarin Trading Ltd. v Wildenstein*, 16 NY3d at 180; *High Tides, LLC v DeMichele*, 88 AD3d 954, 959-960 [2011]).

In this case, the plaintiffs do not allege that they relied upon misrepresentations made by Petrucci, but rather, they assert that they were harmed when other governmental entities relied upon alleged misrepresentations made to them by Petrucci. The plaintiffs failed to allege or demonstrate the existence of a special or privity-like relationship imposing a duty on Petrucci to impart correct information to those entities (*see Mandarin Trading Ltd. v Wildenstein*, 16 NY3d at 181; *High Tides, LLC v DeMichele*, 88 AD3d at 959-960; *US Express Leasing, Inc. v Elite Tech. [NY], Inc.*, 87 AD3d 494, 497 [2011]; *Dobroshi v Bank of Am., N.A.*, 65 AD3d 882, 884 [2009]). The plaintiffs have otherwise failed to establish any other cause of action sounding in negligence against Petrucci based upon the allegations in the complaint. Inasmuch as the plaintiffs failed to demonstrate that there is a substantial basis in law and fact for the cause of action alleging "negligence and negligent misrepresentation" insofar as asserted against Petrucci, the Supreme Court should have granted that branch of Petrucci's motion which was for summary judgment dismissing the eighth cause of action insofar as asserted against her (*see* CPLR 3212 [h]).

The ninth cause of action seeks injunctive relief. To establish, prima facie, entitlement to a permanent injunction, a plaintiff must demonstrate: (a) that there was a violation of a right presently occurring, or threatened and imminent; (b) that he or she has no adequate remedy at law; (c) that serious and irreparable harm will result absent the injunction; and (d) that the equities are balanced in his or her favor (*see Caruso v Bumgarner*, 120 AD3d 1174, 1175 [2014]; *Elow v Svenningsen*, 58 AD3d 674, 675 [2009]).

Here, the plaintiffs have failed to allege or demonstrate that Petrucci was currently harming or threatening the plaintiffs in any way (*see Etzion v Etzion*, 62 AD3d 646, 655 [2009]). Moreover, the plaintiffs failed to demonstrate that they would suffer irreparable harm in the absence of an injunction since the harm that they allegedly would sustain could be sufficiently compensated by money damages (*see Kurlandski v Kim*, 111 AD3d 676, 678 [2013]; *Etzion v Etzion*, 62 AD3d at 655). Inasmuch as the plaintiffs failed to demonstrate that there is a substantial basis in law and fact for the cause of action for injunctive relief insofar as asserted against Petrucci, the Supreme Court should have granted that branch of Petrucci's motion which was for summary judgment dismissing the ninth cause of action insofar as asserted against her (*see* CPLR 3212 [h]).

Since the Supreme Court, in effect, denied that branch of Petrucci's motion which was for summary judgment on her counterclaim pursuant to Civil Rights Law § 70-a on the ground that it was academic, the court did not consider the merits of that branch of Petrucci's motion. Accordingly, the matter should be remitted to the Supreme Court, Nassau County, for a determination of the merits of that branch of the motion.

In conclusion, it should be recognized that the procedural rules applicable to actions involving public petition and participation are the result of a policy determination made by the Legislature to provide enhanced protections for the "right of individuals in the state of New York to express opinions regarding the activities that occur in their communities without fear of retribution through unjustified legal action" (Letter from William Bianchi to Governor Cuomo, July 7, 1992, Bill Jacket, L 1992, ch 767). When applicable, these procedural protections serve to make it easier for defendants to test their adversaries' proof at an earlier stage of the litigation (*see* Vincent R. Johnson, *Regulating Lobbyists: Law, Ethics, and Public Policy*, 16 Cornell JL & Pub Pol'y 1, 7-8 [Fall 2006]). Since the plaintiffs in this case failed to sustain the burden imposed by the Legislature's statutory scheme, that branch of Petrucci's motion which was for summary judgment dismissing the complaint insofar as asserted against her should have been granted.